**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 16a0081n.06

Case No. 15-3187

**FILED**
Feb 05, 2016
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| NICKIE THOMAS GRAY, JR., | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

**O P I N I O N**

BEFORE: GUY, SUTTON, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Nickie Thomas Gray, Jr. had approximately 350 images and 20 videos of child pornography on his computer when investigators executed a search warrant at his house. He was charged with and convicted of one count of knowingly receiving and distributing child pornography in violation of 18 U.S.C. § 2252(a)(2), and one count of knowingly possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). On appeal, he brings several claims of error, challenging his convictions and sentence. On due consideration, we find no merit in any of the claims and therefore affirm his convictions and sentence for knowingly receiving and knowingly possessing child pornography.

**I**

In 2013, a special agent from the Crimes Against Children Unit of the Ohio Bureau of Criminal Investigation used a peer-to-peer file-sharing program[1] to identify internet protocol (IP) addresses of other computers on the program's network that were distributing files containing known images and videos of child pornography. On February 14, 2013, the agent identified an IP address that had such files available for download via the file sharing network. He successfully downloaded three files from that IP address and confirmed that they contained child pornography. The agent then subpoenaed Time Warner Cable for the customer information for the IP address in question and learned that it was registered to Helen Gray in Youngstown, Ohio. Helen Gray is the defendant's mother. She and the defendant were the only occupants of the house. Between February 14, 2013 and April 1, 2014, investigators from the Ohio Bureau of Criminal Investigation, the FBI, and the Mahoning County Sheriff's Office were able to download files containing child pornography from this same IP address using the peer-to-peer program. Investigators continued to confirm that the customer linked to that IP address was Helen Gray and that Nickie Gray also resided with her.

On April 17, 2014, investigators executed a search warrant at the Gray residence and found a computer on a desk in the dining room. The computer was password protected. Helen Gray did not know the password. A computer forensic specialist from the Bureau of Criminal Investigation examined the computer, discovered that it contained child pornography, and seized it as evidence. The IP address of that computer was the same as the IP address that had permitted investigators to download child pornography on the peer-to-peer program.

---

[1] A peer-to-peer program is a software program designed to allow computers to share files across a network. *E.g.*, R. 61, Trial. Tr. at 31, Page ID 767.

Further examination of the computer revealed that it contained peer-to-peer software and numerous images and videos of child pornography. A computer forensic specialist found search terms in the computer's peer-to-peer program that were indicative of child pornography. The computer also showed that images and videos of child pornography had been viewed and deleted. The computer had software installed called SlimCleaner, a program that is capable of securely deleting files.

On May 6, 2014, a federal grand jury indicted Nickie Gray on two counts: (1) receiving and distributing computer files that contained visual depictions of real minors engaged in sexually explicit conduct from February 14, 2013 through April 1, 2014 in violation of 18 U.S.C. § 2252(a)(2); and (2) possessing two Gateway computers and two Western Digital hard drives that contained child pornography that included an image of a prepubescent minor on April 17, 2014 in violation of 18 U.S.C. § 2252A(a)(5)(B). The case proceeded to trial and a jury found Gray guilty of both counts.[2] The district court sentenced Gray to 240 months' imprisonment for each charge to run concurrently, followed by ten years of supervised release for each charge to run concurrently, and ordered him to pay a $200 special assessment. Gray subsequently brought this timely appeal.

## II

Gray claims that his convictions for both knowingly receiving child pornography and knowingly possessing child pornography violate the Double Jeopardy Clause. He did not raise this objection before the district court, and so we review only for plain error. *United States v. Branham*, 97 F.3d 835, 841–42 (6th Cir. 1996). Plain error occurs where there is "(1) 'error,'

---

[2] The jury also returned a special verdict finding that at least one of the images in Gray's possession depicted a prepubescent minor, a fact that increased his potential sentence. *See* R. 65 Sentencing Tr. at 9, Page ID 1583.

(2) that is 'plain,' and (3) that 'affect[s] substantial rights.' If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Johnson v. United States*, 520 U.S. 461, 467 (1997) (alteration in original) (citations omitted) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). "[T]he burden of establishing entitlement to relief for plain error is on the defendant claiming it." *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004). "Only in exceptional circumstances in which the error is so plain that the trial judge and prosecutor were derelict in countenancing it will this court reverse a conviction under the plain-error standard." *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008).

The Double Jeopardy Clause "protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). Two statutes proscribe different offenses only if each offense requires proof of an element that the other does not. *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Using the *Blockburger* test, we have held that convictions for both knowingly possessing child pornography and knowingly receiving the same child pornography constituted multiple punishments for the same conduct. *United States v. Ehle*, 640 F.3d 689, 694–95 (6th Cir. 2011). However, convictions for both receipt and possession of child pornography will stand if *separate conduct* underlies the two charges. *United States v. Dudeck*, 657 F.3d 424, 430 (6th Cir. 2011) (remanding for fact-finding as to whether plea-based convictions were based on separate conduct, whereupon convictions were sustained based on a finding of different images, *see United States v. Dudeck*, No. 12-3076 (6th Cir. Jan. 25, 2013)); *see also United States v. Ogden*, 685 F.3d 600, 603 (6th Cir. 2012) (upholding dual convictions

based on separate conduct where receipt charge was based on obtaining images by means of a computer and possession charge was based on transfer of images to an external hard drive).

The government contends that Gray's "convictions were based on different conduct that occurred at different times and with different evidence." Appellee Br. 11. Indeed, Gray's indictment alleges different dates for the two charges: Count One charges that "[f]rom on or about February 14, 2013, through on or about April 1, 2014, . . . GRAY . . . did knowingly receive and distribute in interstate and foreign commerce, by computer, numerous computer files, which files contained visual depictions of real minors engaged in sexually explicit conduct" in violation of 18 U.S.C. § 2252(a)(2). R. 12, Indictment at 1, Page ID 67. Count Two charges that "[o]n or about April 17, 2014, . . . GRAY . . . did knowingly possess two Gateway computers and two Western Digital hard drives that contained child pornography, . . . which . . . had been shipped and transported in interstate and foreign commerce by any means, including by computer" in violation of 18 U.S.C. § 2252A(a)(5)(B).[3] *Id.* at 2, Page ID 68. The evidence presented at trial showed that Gray used a peer-to-peer software program to search for and save images and videos of child pornography. Investigators were able to access his shared files in the peer-to-peer program's network on the following dates: February 14, 2013; September 25, 2013; September 29, 2013; October 8, 2013; January 31, 2014; March 31, 2014; and April 1, 2014. And on each of those dates, investigators downloaded some of Gray's available files and confirmed that they contained child pornography. This evidence served as the basis for Gray's receiving charge and conviction. On April 17, 2014, investigators executed a search warrant at

---

[3] Although two computers and two hard drives are mentioned in the indictment, the evidence at trial revealed that child pornography was found on only one of the computers and its hard drive. R. 61, Trial Tr. at 183–87, Page ID 919–23 (describing that two hard drives were found in one computer, but that one was not connected to the computer and "would not power on properly"); *Id.* at 211–12, Page ID 947–48.

his home and seized his computer. His computer contained approximately 350 images and 20 videos of child pornography, as well as evidence that he had viewed other images that he had subsequently deleted. R. 62, Trial Tr. at 129–30, 138, Page ID 1121–22, 1129. This evidence served as the basis for Gray's possession charge and conviction.

Although we have never held that alleging different dates for receiving and possessing child pornography charges in an indictment is alone sufficient to constitute separate conduct, it is a relevant consideration. *Dudeck*, 657 F.3d at 431. In *Dudeck*, we remanded to the district court to determine if there was separate conduct for the receiving and possessing charges, and listed different dates, different images, and different media as relevant considerations. *Id.* In *Dudeck*, however, the court vacated a plea-based conviction and remanded for development of a factual record. Here, in contrast, we have both an indictment charging, and factual record supporting, two convictions based on distinct criminal conduct occurring at two different times. On plain-error review, the defendant has failed to carry his burden of showing that the criminal conduct supporting the two convictions is the same. Absent such a showing, we cannot hold that the district court so plainly erred as to be deemed derelict in countenancing the prosecution and conviction of, and sentencing for, two distinct offenses.

We note that there is a circuit split over whether a defendant receiving and possessing child pornography on different dates is alone sufficient to establish the requisite separate conduct to support dual convictions. The Ninth Circuit has squarely held that allegations of different dates for receiving and possessing child pornography charges are not alone sufficient. *United States v. Lynn*, 636 F.3d 1127, 1137 (9th Cir. 2011). But in *United States v. Faulds*, the Seventh Circuit held that evidence first of distribution and later possession of the same images on different dates was "fatal" to the defendant's double-jeopardy claim. 612 F.3d 566, 570 (7th Cir.

2010). And in a case involving different images, the Eleventh Circuit particularly noted the different dates for the charges before holding there had been no double jeopardy violation. *United States v. Bobb*, 577 F.3d 1366, 1375 (11th Cir. 2009). Our court has not yet had occasion to take sides on the circuit split. In *Ehle*, where the possession and receiving charges alleged overlapping dates and the convictions were based on the same images, we struck down the convictions as duplicative. In *Dudeck*, as explained above, dual convictions were allowed to stand where each was ultimately shown to be based on different images and occurred on different dates. In *Ogden*, where possessing and receiving charges alleged overlapping dates, as in *Ehle*, but distinct conduct because the defendant had transferred the images he received to an external hard drive, both convictions were upheld. In no reported case has the Sixth Circuit been confronted with a double-jeopardy challenge to dual convictions for both possession and receiving based on the same criminal conduct differentiated only by different dates of offense. On that specific question there is no controlling answer in the Sixth Circuit law. Under such circumstances, a split of opinion among the other circuits generally "precludes a finding of plain error, for [it] is good evidence that the issue is subject to reasonable dispute." *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015).

Yet, Gray's appeal does not squarely present that specific question. It follows that we need not, and therefore decline to, take sides on the circuit split. Where the dates of offense are undisputedly different and Gray has failed to show that both convictions are based on the same criminal conduct, he has failed to show, under governing Sixth Circuit law in plain-error review, that the two convictions are duplicative. We therefore deny Gray's double-jeopardy claim.

**III**

On appeal, Gray also claims that his motion for acquittal should have been granted because there was insufficient evidence to convict him of either receiving or possessing child pornography. We review a district court's denial of a motion for a judgment of acquittal for insufficient evidence *de novo*. *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010). A defendant claiming insufficiency of the evidence bears a heavy burden. *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006). We must affirm the district court's decision to deny the defendant's motion for acquittal if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "'Circumstantial evidence alone, if substantial and competent, may support a verdict and need not remove every reasonable hypothesis except that of guilt.'" *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002) (quoting *United States v. Talley*, 194 F.3d 758, 765 (6th Cir. 1999)). "We may not 'weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury.'" *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010) (quoting *United States v. M/G Transp. Servs., Inc.*, 173 F.3d 584, 588–89 (6th Cir. 1999)).

Gray argues that there was no evidence that connected him to the child pornography or that showed that he knowingly received or possessed it. However, there was sufficient circumstantial evidence introduced at trial for a reasonable jury to convict Gray of both possession and receipt of child pornography. His mother owned the house and the computer on which the child pornography was discovered. The computer was password-protected, but his mother did not know the password. Gray and his mother were the only occupants of the house, and his mother worked during the day as a high school custodial assistant. Gray used the

computer throughout the day, and thus had the time and opportunity to search, download, view, and delete the child pornography. There was evidence that videos of child pornography had been played on the computer. R. 62, Trial Tr. at 154–55, Page ID 1145–46. Search terms specific to child pornography were used to find the images and videos. *Id.* at 148–49, Page ID 1139–40. The file names to the images and videos were often descriptive of child pornography. *E.g.*, R. 61, Trial Tr. at 68, 92, 95, Page ID 804, 828, 831. With this evidence, we cannot say that no rational trier of fact could have found that Gray knowingly received and knowingly possessed child pornography in violation of 18 U.S.C. § 2252(a)(2) and 18 U.S.C. § 2252A(a)(5)(B).

## IV

The district judge sentenced Gray to 240 months' imprisonment each for knowingly receiving and knowingly possessing child pornography, with the terms to be served concurrently, followed by a 10-year term of supervised release as to each, with the terms to be served concurrently. On appeal, Gray challenges the use of victim impact statements during his sentencing. He also argues that denying an acceptance-of-responsibility reduction in sentencing for defendants who do not plead guilty is an unconstitutional infringement on the right to a jury trial.

## A

Gray first argues that the victim impact statements were impermissible hearsay. However, the Federal Rules of Evidence do not apply to sentencing hearings. Fed. R. Evid. 1101(d)(3). Nor does the Confrontation Clause prevent the introduction of hearsay testimony at a sentencing hearing. *United States v. Katzopoulos*, 437 F.3d 569, 576 (6th Cir. 2006). And the victim impact statements bear at least the "sufficient indicia of reliability to support its probable accuracy" as required by the Sentencing Guidelines and due process. U.S.S.G. § 6A1.3; *see also*

*United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992) (en banc), *cert. denied*, 507 U.S. 990 (1993); *United States v. Greene*, 71 F.3d 232, 235 (6th Cir. 1995) (calling the due process standard a "relatively low hurdle").

Gray next questions the relevancy of these statements from persons who had never met him because the statements were not specific to his case. Gray cites to no law or case that indicates that a victim of child pornography is required to write a new statement every time someone is sentenced for possessing or receiving his or her image. Moreover, these were not statements from generic victims, but rather were impact statements submitted by or on behalf of actual victims identified from the images and videos that Gray received and possessed. These identified victims had a statutory right to be heard at sentencing under the Crime Victims' Rights Act. 18 U.S.C. § 3771(a)(4).

Gray also argues that the authors of the victim impact statements are not "victims" within the meaning of the Crime Victims' Rights Act because they were not "directly and proximately harmed" by his crimes, as required by the Act. 18 U.S.C. § 3771(e)(2)(A). The children depicted in the images and videos of child pornography that Gray received and possessed are victims of Gray's crimes. *See United States v. Hibbler*, 159 F.3d 233, 237 (6th Cir. 1998). According to Gray, however, the criminal act of simply receiving or possessing child pornography is a victimless crime, and the children depicted in the child pornography can only be tangentially considered victims of his crimes. This is "an unrealistically narrow view of the scope of harms experienced" by the victims of child pornography. *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998) (noting that disseminating images perpetuates the producer's abuse, that the images represent an invasion of the privacy of the depicted child, and that the consumer creates an economic motive for the creation and distribution of child pornography).

Thus, the victim impact statements from those children identified were properly considered in his sentencing under the Crime Victims' Rights Act.

Gray claims that the victim impact statements caused the district judge to "emotionally see [him] as a rapist and child molester." Appellant Br. 17. The record does not support his claim. Additionally, one of the factors that a district judge is required to consider in imposing a sentence is "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2). At sentencing, the district judge considered the harm caused by receiving and possessing child pornography and did not equate Gray with a child rapist. Moreover, the victim impact statements were not used to calculate that Guidelines range. *See* R. 6-1, PSR at 5–6. Gray did not dispute at sentencing and does not dispute on appeal that the trial judge properly calculated the Guidelines range, which advised a sentence of 292 to 365 months' imprisonment—a sentence greater than the statutory maximum of 240 months' imprisonment, which he ultimately received.

Gray's claim that the use of the victim impact statements means that his sentence was "based upon facts not submitted in evidence in violation of his right to a jury trial" is also without merit. Reply Br. 5. He was not subjected to a sentence that exceeded the maximum sentence found beyond a reasonable doubt by an impartial jury trial. R. 65, Sentencing Tr. at 20–21, Page ID 1594–95; *see* R. 40, Verdict at 3, Page ID 272 (finding that at least one image of child pornography involved a prepubescent minor). No fact increased the penalty for his crimes beyond the prescribed statutory maximum, and so no further facts needed to be submitted to a jury. *Cf. Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

**B**

Gray brings a facial challenge to § 3E1.1 of the Sentencing Guidelines, which allows for a downward departure in a defendant's offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). Gray argues that the Guidelines create an incentive for a defendant to give up his right to trial to obtain a lesser punishment. Thus, he claims that denying such a reduction because a defendant did not plead guilty unconstitutionally infringes on the defendant's exercise of his constitutional right to a jury trial. However, denying the reduction for acceptance of responsibility is not a penalty for exercising one's right to a jury trial. *See United States v. Cordell*, 924 F.2d 614, 619 (6th Cir. 1991) (per curiam) (holding that § 3E1.1 did not unconstitutionally infringe on a defendant's right against self-incrimination or his right to a jury trial); *see also United States v. DeFranco*, 30 F.3d 664, 668 (6th Cir. 1994) ("Denial of a downward adjustment is not a penalty, and contrition is an appropriate consideration in imposing sentence." (internal citations omitted)); *United States v. Monsour*, 893 F.2d 126, 129 (6th Cir. 1990) (per curiam) (finding that § 3E1.1 was not an impediment to a defendant's right to appeal, but rather reflected leniency for a remorseful defendant). Nor does exercising a right to a jury trial automatically foreclose an acceptance-of-responsibility reduction for a defendant. U.S.S.G. § 3E1.1, cmt. n.2. "Although § 3E1.1 may well affect how criminal defendants choose to exercise their constitutional rights, 'not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid.'" *Cordell*, 924 F.2d at 619 (quoting *Corbitt v. New Jersey*, 439 U.S. 212, 218 (1978)). Gray contested his factual guilt at trial, and he did not submit a written statement or make any oral statement at sentencing in which he accepted responsibility. R. 65, Sentencing Transcript at 6, Page ID 1580. Thus, § 3E1.1 was

constitutionally applied in this case and the trial court's denial of a downward departure did not constitute a penalty for Gray's exercise of his right to a jury trial.

## V

In this direct appeal, Gray argues that his trial counsel provided ineffective assistance. Gray identifies the following instances of allegedly ineffective assistance of counsel: (1) failure to object to multiple showings of child pornography photos and videos; (2) failure to object to the images being taken into the jury room; (3) failure to object to hearsay and irrelevant testimony; (4) failure to object to evidence found as the result of a Fourth Amendment violation; and (5) failure to object to comments made by the trial judge.

Generally, we do not review claims of ineffective assistance of counsel on direct appeal, "since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005) (quoting *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990)); *see also Massaro v. United States*, 538 U.S. 500, 504–05 (2003) ("When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose."). A rare exception to our general rule exists "when a record is adequate enough to address the merits." *United States v. Carter*, 355 F.3d 920, 924 (6th Cir. 2004). That is not the case here. Without additional factual development, Gray cannot show that his counsel's actions were not supported by reasonable strategy or that the alleged errors were prejudicial. *See Massaro*, 538 U.S. at 505. Thus, we decline to address the merits of Gray's ineffective-assistance-of-counsel claims without prejudice, allowing him to raise these claims in a post-conviction proceeding under 28 U.S.C. § 2255.

**CONCLUSION**

For the above reasons, we decline to address the merits of his ineffective assistance of counsel claims without prejudice. We otherwise AFFIRM Gray's conviction and sentence for receiving and distributing child pornography in violation of 18 U.S.C. § 2252(a)(2) and for possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).