**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0264n.06

No. 18-1408

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 23, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | |
| | ) | **ON APPEAL** FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| HERBERT BERNARD JOHNSON, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| **Defendant-Appellant.** | ) | **OPINION** |
| | ) | |

**BEFORE: NORRIS, DAUGHTREY, and LARSEN, Circuit Judges.**

**ALAN E. NORRIS, Circuit Judge.** Defendant Herbert Bernard Johnson was convicted following a jury trial of attempted coercion and enticement of a minor, travel with intent to engage in illicit sexual activity, and possession of child pornography. Johnson appeals, alleging that the evidence introduced by the government at trial was not sufficient to support conviction on any of the charges. For the reasons that follow, we affirm.

**I.**

On August 25, 2015, law enforcement discovered an advertisement posted on Craigslist for the Detroit, Michigan, area seeking a young male, nineteen or younger, to be on the receiving end of very aggressive sexual acts. In addition to the explicit description of what was sought, the advertisement contained pornographic images of young males portraying sexual acts similar to those described. That same day, FBI Agent Ray Nichols responded to the advertisement posing as a fifteen-year-old boy named Jason. Defendant later admitted to law enforcement that he created

and posted the advertisement and engaged in the subsequent email and text conversations with Jason.

After Jason emailed defendant in response to the advertisement, defendant confirmed that the advertisement was real and asked Jason to describe himself. Jason told defendant he was fifteen years old, described his height and weight, and explained that he had never been with a man sexually but was curious about it. Defendant asked for a picture of Jason's body and inquired whether Jason was able to travel. Jason asked defendant to send a picture first, and in response defendant sent two pictures that he claimed were of him: one picture was of a nude torso from approximately the chin to the thighs, and the other was a close-up of an erect adult penis. In response, Jason sent a torso picture of a youthful looking male FBI agent in his underwear. Conversations between defendant and Jason continued for a couple days, but then paused for a few days after defendant told Jason that he would be unavailable for a while.

On September 1st, defendant emailed Jason asking him whether he could travel to Troy, Michigan, and asking Jason for more details about what sort of experiences he was hoping to have. Jason responded that he would not have a car until he turned sixteen, but that he could probably get a ride somewhere. He also explained that he was looking to experiment sexually with a man, including the activities described in defendant's Craigslist advertisement. Jason stated that he had little sexual experience and needed someone to take the lead. On September 4th, defendant emailed Jason about where he lived and suggested they could meet to talk about Jason's expectations for engaging in sexual activity with defendant, but defendant did not confirm that he was willing to engage in sexual activity with Jason.

Defendant and Jason switched from communicating by email to using text messages on September 5th, and defendant flew into Michigan on September 6th. Jason and defendant texted

for almost twelve hours on September 8th. Towards the end of the day, defendant asked Jason about his sexual experience with girls, to which Jason replied that he had been with a girl only once, and since then he has been more attracted to men.

The two arranged to meet at a public park the evening of September 9th. Jason said he would ride his bicycle to the park and meet defendant there. Defendant asked Jason what they would do with his bicycle, but Jason said he could lock it up at the park or, if he had enough advance notice of the meeting time, he could walk to the park instead.

To prepare for the meeting, Agent Nichols assembled approximately fifteen law enforcement officers who were members of the Southeast Michigan Trafficking Exploitation Crimes Task Force. Some officers were tasked with surveillance, some were assigned to the arrest team, and one male officer with a youthful appearance agreed to pretend to be Jason in-person.

When defendant arrived at the park, he pulled into the parking lot but not a parking space. Jason texted defendant and asked him to flash his headlights to identify himself, which he did. The officer posing as in-person Jason walked up to the passenger side of defendant's car. All the while, Agent Nichols was texting with defendant and communicating with the officer engaging defendant as Jason. The officer posing as Jason confirmed with defendant that he was "the guy from Craigslist." Defendant told Jason to get in the car, but instead the officer signaled for law enforcement to move in and arrest defendant. As several officers ran toward defendant's car, he attempted to flee the parking lot by driving over the curb, but police blocked his path and defendant was arrested.

Defendant later told authorities that he lives in Colorado but frequently travels for work, including to the Detroit metropolitan area. Law enforcement officers were able to determine that the Craigslist post Nichols responded to had been renewed several times, and defendant had made

136 posts on Craigslist from November 29, 2014, to August 25, 2015, including some identical to the post described above and others with similar sexually oriented objectives. Defendant admitted to making the Craigslist posts to find sexual partners, and he admitted communicating with Jason and seeking to meet him in the park, but defendant denied that his intention was to have sex with Jason.

Law enforcement searched defendant's hotel room, which revealed a small video recorder, Viagra pills, condoms, a bottle of personal lubricant commonly used for sex, a pair of underwear suitable for a young girl, a box of latex gloves, enemas, and a black mask. Agents also seized a laptop computer, a portable hard drive, and a thumb drive. The video recorder contained footage that appeared to be defendant testing different configurations for the camera, so it would record a good video but be hidden from view.

The laptop computer had a "virtual machine" installed, which means a specialized piece of software that allows a user of the physical computer to install and operate a software version of another, wholly separate computer. Officers found thirty-six images of verified child pornography on defendant's virtual machine, including two images with an infant or toddler victim and twenty-nine others with pre-pubescent victims. The images were cached thumbnail-sized images that appeared to be remnants of video files that were stored on an encrypted external drive plugged into the laptop to view the videos on the virtual machine. A search of defendant's residence in Colorado turned up approximately thirty additional pieces of additional electronic media, including multiple hard drives, computers, laptops, and servers. All of these items, as well as the portable hard drive and thumb drive recovered from defendant's hotel room, were protected by sophisticated encryption. Law enforcement was unable to decrypt any of the media for analysis.

The government charged defendant and his trial lasted four days. The jury returned a verdict of guilty on Count 1: Attempted Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b); Count 2: Travel With Intent to Engage in Illicit Sexual Activity, in violation of 18 U.S.C. § 2423(b); and Count 4: Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). The jury acquitted defendant on Count 3: Transportation of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(1). At the end of the trial, defendant moved the district court for a judgment of acquittal under Federal Rule of Criminal Procedure 29, which the district court denied. The sentencing guidelines' suggested imprisonment range was 121 to 151 months; the district court sentenced defendant to 121 months. Defendant filed a timely appeal claiming that the evidence was insufficient to support any of his three convictions.

**II.**

We review de novo a district court's denial of a motion for a judgment of acquittal notwithstanding the verdict. *United States v. Vichitvongsa*, 819 F.3d 260, 270 (6th Cir. 2016). When, as here, the appeal is based on insufficiency of the evidence, the defendant "bears a very heavy burden." *United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015). The relevant question before us is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "In so doing, we draw 'all reasonable inferences in support of the jury's verdict and will reverse a judgment for insufficient evidence only if the judgment is not supported by substantial and competent evidence upon the record as a whole.'" *Vichitvongsa*, 819 F.3d at 270 (quoting *United States v. Stewart*, 729 F.3d 517, 526 (6th Cir. 2013)). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence

need not remove every reasonable hypothesis except that of guilt." *United States v. Lowe*, 795 F.3d 519, 522-23 (6th Cir. 2015) (quotation omitted).

A.

There is significant overlap in the evidence pertinent to defendant's first two convictions—attempted coercion and enticement of a minor, and travel with intent to engage in illicit sexual activity. Therefore, we will review defendant's appeal of those convictions together.

Because Jason was actually FBI Agent Nichols, defendant was charged with *attempted* coercion and enticement of a minor. "Criminal attempt requires that the defendant intended to commit the crime and that the defendant took a substantial step towards committing the crime, beyond mere preparation." *United States v. Evans*, 699 F.3d 858, 867 (6th Cir. 2012) (citation omitted). The elements of coercion and enticement of a minor are that (1) defendant used a facility or means of interstate commerce in an attempt to knowingly persuade, induce, entice, or coerce an individual under the age of eighteen to engage in sexual activity; (2) defendant believed the person was under eighteen; and (3) that if sexual activity had occurred, the defendant could have been charged with a criminal offense under state law. 18 U.S.C. § 2422(b); *United States v. Roman*, 795 F.3d 511, 515-16 (6th Cir. 2015) (citing *United States v. Hart*, 635 F.3d 850, 855 (6th Cir. 2011)). Coercion and enticement of a minor "does not require proof of a specific intent to actually engage in sexual activity" and instead was "designed to protect children from the act of solicitation itself." *United States v. Hughes*, 632 F.3d 956, 961 (6th Cir. 2011) (citation omitted).

On the other hand, a conviction for traveling with intent to engage in illicit sexual conduct requires that the government prove that (1) defendant traveled in interstate commerce, and (2) defendant did so with the intent to engage in illicit sexual conduct. *See* 18 U.S.C. § 2423(b); *United States v. Lay*, 583 F.3d 436, 440 (6th Cir. 2009). Illicit sexual conduct need not be

6

defendant's only purpose for travel, or even his dominant purpose. *See United States v. Harris*, 480 F.2d 601, 602 (6th Cir. 1973); *United States v. Goodwin*, 719 F.3d 857, 862 (8th Cir. 2013) ("The illicit behavior must be one of the purposes motivating the interstate transportation, but need not be the dominant purpose.") (quotation and alterations omitted).

Defendant does not dispute that he posted the Craigslist advertisement in the Detroit area and traveled there after establishing contact with Jason. The record suggests that defendant had work obligations in Detroit, so meeting Jason likely was not his sole, or perhaps even dominant purpose, but it was a purpose. If defendant intended to have sex with fifteen-year-old Jason, which defendant disputes, it would undoubtedly be illicit sexual activity.

The gist of defendant's appeal on both counts is that he was not trying to entice Jason into sexual conduct, and in fact had no intent to engage in any sexual activity with Jason. More specifically, defendant asserts that the government did not introduce enough evidence at trial so that a rational juror could be convinced of his guilt beyond a reasonable doubt.

Defendant points out a number of alleged weaknesses in the government's case. For instance, while defendant readily admits that his Craigslist advertisement was posted for the purpose of finding a sexual partner, he points out that the Craigslist terms of use require users to be at least eighteen, and his post sought sexual encounters with young *looking* men aged nineteen or younger (which of course encompasses those aged eighteen and nineteen, who are legally capable of consent).

Defendant also points out that in none of the emails or text messages exchanged with Jason did defendant explicitly agree to or request any specific sexual activity with Jason. Defendant emailed Jason and asked what Jason hoped to experience. Jason responded that he was interested in experiencing sex with a man, including those sexual experiences described by defendant in his

7

Craigslist advertisement. Defendant asked where Jason lived and suggested they meet to talk about Jason's expectations, but offered "no promises" about following through.

Despite the lack of explicit references to sex, all of the interactions between defendant and Jason must be viewed in the context of defendant's sexually graphic and explicit Craigslist advertisement that marked the beginning of their relationship. Defendant admits that he designed and posted his Craigslist advertisement to find sexual partners. The advertisement purported to be a "daddy looking for a smooth y[ou]ng son" and referenced "looking for a real situation" and "pervy y[ou]ng incest taboo all good." Agent Nichols testified at trial that in his experience those are code words often used by those with a sexual interest in children. The advertisement included several pornographic images which appeared to portray small, young males engaged in graphic sex acts with older, larger men.

Early in their first conversation, Jason told defendant that he was fifteen years old. Defendant's almost immediate reaction was to ask for a picture of Jason's body and to send him two nude pictures of an adult male—a torso picture and a close-up picture of an erect penis. Defendant claimed he was the man in both pictures. After Jason indicated that he was interested in experimenting sexually with defendant, defendant sought to meet with Jason and to keep it secret from Jason's mother. In conversation, while trying to set up a meeting, defendant asked Jason about his "experience with girls." Jason and defendant settled on a plan whereby Jason would lie to his mother and make his way to a public park where defendant would pick him up.

Defendant claims that the evidence at most suggests that he intended to have a conversation with Jason about his sexual experiences at the public park. But other parts of the record support the government's contention that defendant had plans to pick Jason up and take him back to defendant's hotel room for sex. First, defendant expressed concern to Jason about what they will

8

do with his bicycle if he rode it to the park, supporting the idea that defendant had every intention to pick Jason up at the park and go elsewhere, not stay at the park and talk. Next, when defendant arrived at the park he pulled into the parking lot and left the car running, instead of pulling into a parking spot and turning off the car. When Jason asked, defendant identified himself by flashing his lights. A local police officer acting as Jason approached the car, and asked defendant if he was "the Craigslist guy." Defendant answered yes and told "Jason" to "get in the car." Once law enforcement officers identified themselves and moved in, defendant attempted to flee but officers took him into custody.

Searching defendant's hotel room, officers discovered his work laptop with sophisticated software installed that allowed a virtual machine—essentially a software version of a second computer—to run within his laptop. The password for the virtual machine was "sexyperv." Along with the laptop, officers seized a mini HD video recorder with tripod, an encrypted portable hard drive, and an encrypted flash drive. Review of the video camera revealed footage of defendant trying to set up the camera for recording so that it was hidden from view. In addition to the electronics gear, agents found Viagra pills, condoms, a bottle of personal lubricant designed for sexual activity, a pair of little girls' underwear, a box of latex gloves, enemas, and a black mask. At defendant's residence, law enforcement seized approximately thirty additional media items, including multiple hard drives, computers, laptops, and two servers, all of which were encrypted.

Undoubtedly, the government's case against defendant would have been stronger had defendant made more explicit sexual requests or overtures in his email and text conversations with Jason. The government argued that defendant's careful wording in his email and text communications, coupled with the sophisticated virtual machine and encryption technology,

suggested that defendant knew his conduct was illegal and sought to keep it hidden from law enforcement.

After a careful review of the entire record, we conclude that there was substantial and competent evidence of defendant's guilt and that evidence was more than sufficient for a rational juror to reach a guilty verdict on both counts. The jury did so here, and we affirm the district court's denial of defendant's motion for a judgment of acquittal on these counts.

B.

After his arrest, law enforcement interviewed defendant and, among other things, asked him about child pornography. Defendant stated that he had never intentionally sought child pornography, but he allowed that there might be some either in his email or on his computer. Defendant's hotel room contained a portable hard drive and thumb drive, both encrypted in a way that prevented law enforcement from analyzing them. A search of his residence revealed several other forms of media, again all encrypted in a way that prevented law enforcement analysis. However, when law enforcement searched the virtual machine installed on his work laptop, agents found thirty-six images of verified child pornography, including two images that contained an infant or toddler victim, and twenty-nine images that contained pre-pubescent victims. These were not full-sized images, but rather thumbnail images that were saved to the system's cache folder when someone using the computer viewed video files of child pornography from an encrypted external drive.

The government's theory is that defendant knowingly possessed child pornography on the encrypted external media and plugged the external devices into the computer to view it. The thumbnail files show that they were created on the system the same day defendant arrived in Detroit and checked into his hotel. Despite this plausible theory, the burden rests with the

government to show that (1) defendant knowingly possessed material that contained an image of child pornography; (2) defendant knew the material contained child pornography; and (3) the image of child pornography had been shipped or transported using any means or facility of interstate or foreign commerce. 18 U.S.C. § 2252A(a)(5)(B); *see also United States v. Kniffley*, 729 F. App'x 406, 410 (6th Cir. 2018).

When images are only recovered from a computer system's cache, rather than organized on a hard drive or other storage media in a more intentional manner, it is sometimes more difficult for the government to show that a defendant *knowingly* possessed the child pornography. *See, e.g.*, *United States v. Kuchinski*, 469 F.3d 853, 863 (9th Cir. 2006) (holding that sentencing enhancement was erroneous without proof defendant knew about or controlled child pornography found in internet cache). Nevertheless, with sufficient proof of knowledge, cached thumbnail images can be the basis of conviction. *See United States v. Huyck*, 849 F.3d 432, 443 (8th Cir. 2017) (upholding conviction based on cached thumbnails present on an external hard drive). And circumstantial evidence of knowledge may be sufficient to support a jury's guilty verdict. *Id.*; *see also United States v. Breton*, 740 F.3d 1, 17 (1st Cir. 2014).

Here, defendant admitted that the laptop was his work computer, and that he installed and password protected the software-based virtual machine on the laptop. The government asserts that the internet search history on the virtual machine included many search terms that are indicative of someone with a sexual interest in children. When "[s]earch terms specific to child pornography" are found on a computer, it is persuasive circumstantial evidence that the user "knowingly possessed child pornography." *United States v. Gray*, 641 F. App'x 462, 468 (6th Cir. 2016).

In addition to the search terms and defendant's exclusive control of the laptop, the jury was free to consider the surrounding evidence of defendant's sexual interest in children: the Craigslist

advertisement, the presence of myriad encrypted media devices, the items in his hotel room including little girls' underwear, and defendant's own statement to law enforcement that they might find child pornography when they searched his email or computer.

In this case, defendant offers no alternative explanation for his possession of the pornographic images of children, and the evidence supporting defendant's guilt is copious. A rational juror could conclude from the evidence that defendant was guilty of possession of child pornography. Therefore, we affirm the district court's denial of defendant's motion for judgment of acquittal on the charge of possession of child pornography.

**III.**

The judgment of the district court is **affirmed**.