RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0220p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

          *v.*                                          Nos. 09-6507/10-5276

DANIEL SCOTT OGDEN,
                    *Defendant-Appellant.*

Appeals from the United States District Court
for the Western District of Tennessee at Memphis.
No. 06-20033-001—S. Thomas Anderson, District Judge.

Argued: March 8, 2012

Decided and Filed: July 17, 2012

Before: GRIFFIN and KETHLEDGE, Circuit Judges; and THAPAR, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Paul L. Nelson, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant. Debra L. Ireland, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee. **ON BRIEF:** Paul L. Nelson, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant. Debra L. Ireland, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

_____

**OPINION**

_____

    KETHLEDGE, Circuit Judge. Daniel Ogden was convicted on several charges relating to his sexual relationship with an underage girl: persuading a minor to engage in sexually explicit activity for the purpose of producing a visual depiction, use of a

_____

    [*]The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

"means of interstate . . . commerce" to persuade a minor to perform sexual acts, receipt of child pornography, and possession of child pornography. *See* 18 U.S.C. §§ 2251(a), 2422(b), 2252(a)(2), (4)(B). On appeal, Ogden argues, among other things, that at trial he should have been allowed to present evidence of online conversations between the victim and other men. Ogden says those conversations were critical to his defense against the charge that he, rather than the other men, induced the victim to produce the child pornography found on his hard drive. We reject his arguments and affirm.

I.

In March 2005, Ogden contacted the victim online through Yahoo! Instant Messenger. She told him that she was 15 and lived in California; he said he was 25, lived in Pennsylvania, and was a cancer patient. The victim discussed her friends and family, and sent photos of them.

Ogden asked for more photos. He eventually asked for photos of the victim sunbathing, then pictures of her bras, and pictures of her topless. She sent them. Thereafter, Ogden asked the victim "if he was going to get to see more." He also told her that she could change clothes only in view of her webcam, which broadcasted live video to his computer.

Eventually the victim sent Ogden a number of sexually explicit photos and videos of herself. In one instance, at Ogden's request, she masturbated while Ogden watched on the webcam. He saved these images on an external hard drive.

The victim turned 16 in 2005. In September of that year, Ogden traveled to see her in San Francisco. They checked into a hotel room and had sex. The victim's mother managed to reach her by cell phone. The victim hung up on her, but Ogden told the victim that she should go home. When she did so, her father said that he had found her journal. She then disclosed her relationship with Ogden. The victim's father invited Ogden to visit, ostensibly to discuss the future of their relationship. When he arrived, the police arrested him. It turned out that Ogden was 34, not 25, that he was cancer-free, and that he lived in Tennessee, not Pennsylvania.

The government thereafter obtained a ten-count indictment against Ogden. He went to trial. The day before the court was scheduled to begin selecting a jury, the government produced records of 400 online conversations found on the victim's computer (the "chat logs"). The chat logs included conversations between the victim and other men that occurred months before she met Ogden. The chat logs make clear that the victim sent explicit images of herself to some of the other men. Ogden's lawyer requested a continuance to review the chat logs, but the district court denied the request. The court instead held that the government could not use the conversations as evidence against Ogden.

Ogden's lawyer thereafter sought to admit the chat logs at trial, arguing they were necessary to show that the explicit images found on Ogden's hard drive were actually images that the victim produced for others. The district court denied the request.

The jury convicted Ogden on all counts. Ogden moved for a new trial, which the district court denied. The court later sentenced Ogden to 204 months in prison. After another hearing, the court ordered Ogden to pay $64,735 in restitution. This appeal followed.

II.

A.

Ogden first challenges his convictions for possession, as well as receipt, of sexually explicit images of a minor. *See* 18 U.S.C. §§ 2252(a)(4)(B), 2252(a)(2). He argues that his convictions for both offenses violated the Double Jeopardy Clause because, he says, the possession charge was a lesser-included offense of the receipt charge. *See, e.g.*, *United States v. Schales*, 546 F.3d 965, 978 (9th Cir. 2008) (holding that possession under § 2252(a)(4)(B) can be a lesser-included offense of receipt under § 2252(a)(2)); *see also United States v. Dudeck*, 657 F.3d 424, 428-29 (6th Cir. 2011) (reaching a similar conclusion under 18 U.S.C. § 2252A). He therefore asks us to invalidate the possession conviction.

On the record here, however, the possession charge was not a lesser-included offense.  The indictment alleged, for purposes of the possession count, that Ogden possessed an "external Maxtor hard drive" that contained explicit images.  In contrast, in each of the receipt counts, the indictment alleged that Ogden obtained the images "by means of a computer."  Thus, the "possession [offense] was undertaken by transfer to a different medium" than the one on which Ogden received the explicit images. *Dudeck*, 657 F.3d at 431.  That means the two charges were based on different conduct, which in turn means that the possession charge was not a lesser-included offense of the receipt one. *Id.*

B.

Ogden argues that the evidence was insufficient to support his conviction for receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2).  That provision requires that the defendant  "knowingly receive[]" the images, which Ogden construes to mean that the defendant was aware at the moment he received the image—*i.e.*, before even looking at it—that the image depicted a minor engaged in sexually explicit conduct.  And Ogden contends that the government did not prove that he knew, at the moment he received each of the images found on his hard drive and introduced at trial, that they were sexually explicit.

The argument is incorrect both legally and factually.  Legally, a defendant acts knowingly, for purposes of § 2252(a)(2), if he is aware that his receipt of the illegal images "'is practically certain to follow from his conduct.'" *United States v. Schwarte*, 645 F.3d 1022, 1032-33 (8th Cir. 2011) (quoting *United States v. Bailey*, 444 U.S. 394, 404 (1980)).  And factually, there was plenty of evidence that Ogden was practically certain that he would receive sexually explicit images from the victim as a result of his conduct.  The victim testified that Ogden asked to see topless photos of her; that he asked if he could "see more"; that he insisted that she change clothes only on camera; that Ogden once asked her to masturbate while he watched on a webcam; and that she complied.  In another conversation, the victim told Ogden that she "took hot pics today."  Ogden then asked if she had sent the pictures to him, to which the victim responded

"yeah." And Ogden expressed gratitude for the images he received: in one instance he sent the victim a video of himself ejaculating, explaining that an "oiled up nude shot" of the victim "sort of got to" him. The evidence makes clear that Ogden knew what sort of images he was going to receive.

C.

Ogden next argues that the evidence was insufficient to support his conviction for enticing the victim to engage in sexually explicit conduct for the purpose of producing a visual depiction, in violation of 18 U.S.C. § 2251(a). Specifically, he says there was no evidence that any of the depictions of sexual conduct that the victim sent him were actually prepared in response to his coaxing, as opposed to somebody else's.

The record includes evidence, however, that the victim produced sexually explicit images of herself after Ogden asked her to do so. Again, the victim testified that she masturbated on a live webcam at Ogden's request. Moreover, the log of her conversation with Ogden—in which she says she "took hot pics today"—makes clear that she was taking sexual pictures of herself during the period in which she was chatting with Ogden, rather than sending him pictures that she had already taken for other men. The victim also testified that she recognized videos found on Ogden's hard drive as videos that he had taken of her. Some of the videos found there depicted her nude. Thus, a rational trier of fact could find Ogden guilty under § 2251(a) based on the evidence introduced at trial.

D.

But that same evidence, Ogden argues, would have been less persuasive if the government had timely produced (and the district court had admitted) records of the victim's online conversations with other men. In those chat logs, the victim mentioned sending explicit images of herself to the other men. According to Ogden, the chat logs show that one of those men might have originally persuaded the victim to take the explicit pictures later found on Ogden's hard drive. Thus, Ogden contends the government's failure to produce these conversations until the day before trial violated

its obligation under *Brady v. Maryland* to produce material exculpatory evidence. 373 U.S. 83, 87 (1963). Ogden also says that the district court abused its discretion when it refused to adjourn the trial so that his lawyer could review the new evidence.

The problem with Ogden's argument is that the chat logs were not admissible. In cases "involving alleged sexual misconduct," Federal Rule of Evidence 412(a)(1) forbids the introduction of "evidence offered to prove that a victim engaged in other sexual behavior." The chat logs were this sort of evidence, since "sexual behavior" includes "verbal conduct." 23 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 5384 (1st ed. 1969); *see also United States v. Papakee*, 573 F.3d 569, 572-73 (8th Cir. 2009). The conversations therefore were not admissible here, which means they were not subject to *Brady*, since that rule applies only to evidence that is "admissible at trial" or that would lead directly to admissible evidence. *United States v. Phillip*, 948 F.2d 241, 249-50 (6th Cir. 1991). And for the same reason, the late disclosure of those conversations did not warrant a continuance. *See generally United States v. Garner*, 507 F.3d 399, 408 (6th Cir. 2007).

Ogden responds that the Constitution trumps Rule 412 and required admission of the chat logs. (He seeks reversal on this basis as well.) The Due Process Clause and Sixth Amendment, he observes, guarantee "criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citation omitted). That guarantee requires consideration of two factors: first, the extent to which the evidence was "central to the defendant's claim of innocence"; and second, the extent to which its exclusion was supported by a "valid state justification." *Id.*

On this record, the chat logs were not critical to Ogden's defense. All the government needed to prove for the enticement charge was that Ogden induced the victim to engage in conduct to produce at least one explicit image. And the record includes the victim's testimony that she masturbated on webcam, at Ogden's request, while he watched. Chat-log evidence that the victim sent images to other men would not impeach the victim's testimony as to this specific incident—and indeed it might have

bolstered the testimony. The victim also testified that Ogden made videos of her without her knowledge and that she recognized "videos that he recorded of [her]" among the videos found on Ogden's hard drive. Some of the videos on Ogden's hard drive depicted the victim nude. The chat-log evidence would not have impeached this testimony to the point where the Constitution required its admission. *See generally Holmes v. South Carolina*, 547 U.S. 319, 324-25 (2006).

Ogden also contends that the chat logs could have impeached testimony by the victim's mother that she did not know that her daughter was sending pictures to men on the internet and that the Ogden affair caused the victim psychological harm. But neither point has much relevance to the question of Ogden's guilt, which means the chat logs were not critical for this purpose either.

Ogden likewise contends that the chat logs show that the victim misled her parents about her interactions with other men. He says that this revelation would have allowed him to argue to the jury that she had misled them too. That argument is not compelling; and in any event the jury heard other evidence that the victim lied to her parents, given that she admitted at trial to misleading her parents about her trip to visit Ogden.

The government's interest in excluding the chat logs, in contrast, was strong. The rape-shield rule encourages victims of sexual abuse to report their abusers by protecting the victims' privacy. *See* Fed. R. Evid. 412 advisory comte. notes. The rule's protections were especially important in this case, because the victim was underage. *See Clardy v. McKune*, 89 F. App'x 665, 673-74 (10th Cir. 2004). Given the strength of these interests, and the weakness of Ogden's, the Constitution did not require admission of the chat logs.

E.

Finally, Ogden argues that the district court should have admitted the chat logs during his restitution hearing, at the close of which he was ordered to pay for most of her psychotherapy expenses. But Ogden cites nothing in the record to suggest the district

court actually excluded the chat logs from the restitution hearing. And if Ogden assumes the court did so, he assumes too much: The rules of evidence do not apply during sentencing proceedings. *See* Fed. R. Evid. 1101(d). His argument is meritless.

*   *   *

The district court's judgment is affirmed.