**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0192n.06

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

    **Plaintiff-Appellee,**

v.

DAMION D. FAULKNER,

    **Defendant-Appellant.**

FILED
Apr 12, 2018
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

---

**BEFORE:** MERRITT, CLAY, and SUTTON, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Damion D. Faulkner appeals his convictions and sentences for multiple child pornography offenses under 18 U.S.C. § 2251 and 18 U.S.C. § 2252A. He argues that his convictions and sentences for receiving and possessing child pornography violate the Double Jeopardy Clause and that the district court made various other errors at sentencing. For the reasons set forth below, we **REMAND** the case with instructions for the district court to determine whether Faulkner's convictions for receiving and possessing child pornography were based on the same pornographic images or different pornographic images. We do not address Faulkner's remaining challenges.

**FACTUAL AND PROCEDURAL HISTORY**

Faulkner's background suggests a history of pedophilia. On about five occasions in 2006, Faulkner fondled his five-year-old niece, M.F., with his hands. He also took pictures of M.F. while she was asleep, one time moving aside her shorts to see her underwear. When M.F.

told her mother what Faulkner had done, she was taken to the hospital. However, no evidence of sexual contact was found and the matter was dropped.

Around seven years later, on July 20, 2013, Faulkner took pornographic photographs and a pornographic video of O.B., his niece's five-year-old stepsister. O.B. was sleeping at the time, and Faulkner pulled back her shorts and underwear so he could focus on her vaginal area, touching her with his fingers. In the ensuing months, Faulkner emailed the pornographic images, and sometimes the video, to at least 10 different individuals.

The next day, July 21, 2013, Faulkner again attempted to produce pornographic photographs of O.B. Specifically, he watched O.B. and M.F. (who was 11 at the time) play together, hoping to catch O.B. in a sexual pose. However, he failed to take any provocative pictures. His photographs—some of which included M.F.—were not overtly sexual.

Authorities eventually became aware of Faulkner's online pornographic activity. On January 3, 2014, police executed a search warrant at Faulkner's residence. Faulkner immediately confessed to producing and distributing pornographic images and video of O.B. When police told Faulkner he could spare his victims further trauma by admitting to previous misconduct, Faulkner confessed to molesting M.F. in 2006. A search of Faulkner's computer revealed the photographs and video of O.B. and M.F, as well as 3,300 images and 103 videos of child pornography. In addition, Faulkner had saved approximately 200 images of child pornography from his email account to his cell phone's media card.

In June 2016, the government filed a 15-count superseding indictment against Faulkner, charging him with the following crimes:

- Production of Child Pornography on or about July 20, 2013, in violation of 18 U.S.C. § 2251(a) and (d) (Count 1);
- Production and Attempted Production of Child Pornography on or about July 21, 2013, in violation of 18 U.S.C. § 2251(a) and (d) (Count 2);

- Eleven counts of Transportation of Child Pornography on various dates in July, August, September, and October 2013, in violation of 18 U.S.C. § 2252A(a)(1) and (b) (Counts 3–13);

- Receipt of Child Pornography between March 11, 2013 and November 14, 2013, in violation of 18 U.S.C. § 2252A(a)(2)(a) and (b) (Count 14); and

- Possession of Child Pornography on or about January 3, 2014, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b) (Count 15).

Faulkner pleaded guilty to all counts. With regard to the receipt and possession counts, Faulkner admitted that he had received and possessed child pornography. However, he did not admit to receiving or possessing any images or videos in particular. At the end of the plea hearing, the district court explained—and both parties agreed—that Faulkner "can appeal the sentence imposed as well as the finding of guilt."

As relevant here, the PSR determined that counts 1 and 2 (production and attempted production of child pornography of O.B.) caused separate harms, and therefore could not be grouped in the guidelines offense-level calculations. This determination increased Faulkner's overall offense-level from 42 to 43. In addition, the PSR determined that Faulkner had two criminal history points, one for his shoplifting conviction and another for his drunk-driving conviction. That put Faulkner in criminal history category II. At Faulkner's offense level and criminal history category, the guidelines range was life imprisonment. However, because life imprisonment was not authorized for any of his crimes, Faulkner's guidelines range became the maximum sentence he could receive for each offense, imposed consecutively. *See* U.S.S.G. § 5G1.2(d). That figure corresponded to 320 years' imprisonment—30 years on counts 1 and 2 plus 20 years on counts 3 through 15.

At sentencing, Faulkner argued, among other things, that counts 1 and 2 should have been grouped together in his guidelines offense-level calculations. The district court rejected this argument, reasoning that counts 1 and 2 caused separate, distinct harms. In addition to

contesting the district court's guidelines calculations, Faulkner requested leniency and expressed remorse. Faulkner was ultimately given a below-guideline sentence of 55 years' imprisonment.

On appeal, Faulkner argues that his convictions for receiving and possessing child pornography violate the Double Jeopardy Clause; that his convictions for production and attempted production of child pornography should have been grouped together under guideline § 3D1.2(b); that his criminal history was overstated; and that his sentence was substantively unreasonable.

## DISCUSSION

We first consider Faulkner's Double Jeopardy challenge. Because we remand for further proceedings related to this issue, we do not reach Faulkner's remaining challenges.

### Standard of Review

Although Faulkner did not raise any Double Jeopardy claim in the district court, he argues that we should nonetheless review his challenge *de novo*. (*See* Def.'s Reply Br. at 6–7 (citing *United States v. Rosenbarger*, 536 F.2d 715, 721–22 (6th Cir. 1976)).) The government disagrees, arguing that we should review Faulkner's claim for plain error. (*See* Gov't Br. at 20 (citing *United States v. Dudeck*, 657 F.3d 424, 427 (6th Cir. 2011)).) We need not resolve this dispute because, as discussed below, Faulkner is entitled to a remand under either standard.

### Analysis

Under the Fifth Amendment's Double Jeopardy Clause, a defendant cannot be put "in jeopardy of life or limb" twice for the same offense. U.S. Const. amend. V. ("nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb"). The Supreme Court interpreted this requirement in *Blockburger v. United States*, explaining that "the same act or transaction constitutes a violation of two distinct statutory provisions"—and therefore

comports with the Double Jeopardy Clause—when "each provision requires proof of a fact which the other does not." 284 U.S. 299, 304 (1932).

In *United States v. Ehle*, 640 F.3d 689 (6th Cir. 2011), we held that possession of child pornography does not require proof of any fact that the receiving provision does not. *See* 18 U.S.C. § 2252A(a)(2)(A), (a)(5)(B). "[O]ne obviously cannot 'receive' an item without then also 'possessing' that item, even if only for a moment." *Ehle*, 640 F.3d at 695. Consequently, convicting a defendant for both offenses violates the Double Jeopardy Clause unless the convictions stem from different acts or transactions. *Id.* at 694–96. The government argues that Faulkner's receipt and possession convictions were based on separate conduct because: (1) the offenses took place on different dates; (2) Faulkner received his photographs through the internet but possessed them on the media card of his cell phone; and (3) the offenses involved different pornographic images.

We reject the government's first argument—that Faulkner's receipt and possession offenses are distinct because they occurred on different dates. Indeed, we addressed this exact issue in *Ehle*. In *Ehle*, the defendant was charged with receiving child pornography from the internet between 2006 and April 2007 and then possessing that same pornography on his computer and "stacks of computer disks" in April 2007. *Id*. at 696. We found that punishing a defendant for both receiving and possessing the same images would "require wholly subjective line-drawing to determine when possession incidental to receiving morphs into possession independent of the reception." *Id*. Accordingly, we held that a defendant cannot be convicted of receiving child pornography on one date and possessing that same child pornography on a later date. *Id.* at 696–98. Applying *Ehle* to this case, Faulkner's receipt and possession offenses are not distinct solely because they occurred on different dates.

We also reject the government's second argument—that Faulkner's receipt and possession offenses were based on separate conduct because he received pornographic images at his email address, but later possessed pornographic images on the media card of his cell phone. Again, *Ehle* is instructive. In *Ehle*, the defendant downloaded pornographic images to his computer and later transferred them to "stacks of computer disks." *Id.* at 696. The government argued that as of a result of this transfer between electronic media, the receipt and possession offenses were based on separate conduct. We disagreed, explaining that "electronically transferring the pornography to different locations" is insufficient by itself to support separate convictions for receiving and possessing child pornography. *Id.* *Ehle* is binding on us as a published case. Consequently, we do not follow a later case, *United States v. Ogden*, 685 F.3d 600, 603 (6th Cir. 2012), that approached this issue differently.[1] *See Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.").

Finally, we consider the government's third argument—that Faulkner's receipt and possession convictions were based on different child pornography. Unfortunately, because the record is silent as to which particular images or videos supported Faulkner's receipt and possession convictions, we cannot resolve this argument. Accordingly, we remand the case for further proceedings so that the district court can determine whether Faulkner's receipt and possession offenses are based on the same child pornography or different child pornography.

---

[1] Our discussion here applies only to the *electronic* transfer of pornographic images. We need not decide whether the Double Jeopardy Clause permits separate convictions for receipt and possession of child pornography if the defendant received a particular *physical* copy of an image, but later possessed a different *physical* copy of that same image.

*See Dudeck*, 657 F.3d at 433 (remanding the case to the district court "for a determination as to whether Counts One, Two and Three are supported by separate conduct or images").

Given our ruling on the Double Jeopardy issue, we do not reach Faulkner's remaining claims.

**CONCLUSION**

For the foregoing reasons, we **REMAND** the case for further proceedings so that the district court can determine whether Faulkner's receipt and possession offenses are based on the same child pornography or different child pornography.

**MERRITT, Circuit Judge, concurring**. I am a bit confused about how the district court got to a 55-year *de facto* life sentence in this case and about what the Court is ordering the district court to do on remand, but I do concur in reversing and remanding the case to the district court for further consideration.

On the double jeopardy issue discussed in the Court's opinion, there are no facts in the record suggesting that the pornographic images "received" by the defendant were any different from those he continued to possess on his cell phone's media card. It seems apparent that the same material "received" was then "possessed." There are no facts different in the receiving and possessing charges. The material is the same, and there should not have been double punishment for the same offense.

I also think that Count II based on the government's charge of "attempt" does not state an offense and ought to be dismissed under Rule 12(b) of the Federal Rules of Criminal Procedure. The pictures referred to in Count II that the defendant took on July 21 do not support a valid conviction for "attempt." In those pictures incorporated in Count II, whatever may have been the defendant's "intent," the two girls shown in the pictures are fully clothed and the pictures could not reasonably be considered "pornographic." They may constitute the invasion of the right to privacy and constitute "harm" in that sense. But I cannot see how taking and distributing pictures of fully clothed girls could constitute the crime of "attempted" production of child pornography. *See United States v. Sims*, 708 F.3d 832, 835 (6th Cir. 2013) (citations omitted) (conviction requires proof that the defendant "specifically intended to create child pornography" and "took a substantial step towards the creation of child pornography"). Here the act of taking the fully clothed pictures makes the completed crime itself impossible. I do agree, however, that the word "attempt" in this context is vague and could include many things. The rule of lenity in

interpreting ambiguity counsels against increasing the harshness of the punishment by giving the

crime of "attempt" an expansive interpretation.