NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0525n.06

Case No. 24-6083

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 12, 2025
KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

KENO LANE,

     Defendant - Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

OPINION

Before: GIBBONS, McKEAGUE, and RITZ, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Over the past decade, Defendant-Appellant Keno Lane has been entangled in the criminal justice system. In 2017, a federal district court sentenced Lane to a 60-month term of imprisonment, followed by three years of supervised release, pursuant to a plea agreement for crimes he admitted committing in 2015. After his release in 2020, Lane began a three-year term of supervised release. But within three months of his release, the probation office submitted a petition alleging that Lane had violated the terms of his supervised release. And in the year following Lane's release, the probation office superseded its original petition multiple times due to repeated violations.

By January 2022, the district court had revoked Lane's supervision, imposed a six-month custodial sentence, and ordered him to serve fifteen months of supervision upon his release. After his release, the probation office filed yet another petition alleging two violations: that Lane (i) was charged with fifteen counts ranging from first-degree murder to aggravated assault with a deadly weapon in a Tennessee state court ("Violation #1") and (ii) failed to report for drug testing on

several occasions ("Violation #2"). In November 2024, Lane appeared before the district court and admitted to Violation #1, for which he pled guilty to reckless homicide in exchange of having his state charges dismissed. Based on Lane's state-court plea hearing, the district court concluded that Violation #1 should be categorized as Grade A given the involvement of a firearm and the violent nature of the crime. In calculating the applicable Guidelines range, the district court determined that Lane's range was 24 to 30 months. Subsequently, it ordered Lane to serve 24 months in custody.

On appeal, Lane argues that his sentence is both procedurally and substantively unreasonable. Because we afford the district court's sentencing decision significant deference and Lane's state offense involved the possession of a firearm, we affirm the district court's sentence.

## I.

### A. Lane's Original Conviction & Sentence

In June 2016, a federal grand jury in the Middle District of Tennessee returned a thirty-one count multi-defendant indictment that included Lane, charging him with the following four counts: two counts of illegally possessing a firearm as an unlawful user of a controlled substance, in violation of 18 U.S.C. §§922(g)(3) and 924; one count of making false declarations before a grand jury, in violation of 18 U.S.C. § 1623; and one count of obstructing a federal grand jury proceeding, in violation of 18 U.S.C. § 1503. In April 2017, Lane pled guilty to each of these counts.

In the plea agreement, Lane admitted to various facts underlying these four counts. First, Lane admitted to being a regular and unlawful user of controlled substances such as marijuana and cocaine. Second, Lane admitted that when a Metropolitan Nashville Police Department ("MNPD") officer stopped his girlfriend's vehicle in September 2015, he had a stolen semi-automatic pistol that a ballistic test later determined had been used in multiple violent crimes,

including armed robberies and a murder. Third, Lane admitted to providing false testimony to a grand jury regarding how he had obtained this pistol. Fourth, Lane admitted that when a different MNPD officer stopped him in January 2016, he was in possession of another stolen firearm and was subsequently arrested, although he was able to post bond soon thereafter. Lastly, Lane admitted to failing to appear in response to a grand jury subpoena in February 2016, although he knew he had to be present and was not in custody or otherwise unavailable at the time.

In October 2017, the district court sentenced Lane to a sixty-month term of imprisonment, followed by three years of supervised release.

### B. Lane's Repeated Violations of His Supervised Release

In June 2020, Lane completed his prison sentence and began his three-year term of supervised release. By October 2020, the probation office submitted a petition alleging that Lane had violated the conditions of his supervision due to his failure to: (1) notify the probation officer of his address change; (2) notify the probation officer of his loss of employment; (3) participate in a court-mandated drug-testing program and substance abuse treatment; (4) register as a convicted felon; and (5) pay the court-ordered special assessment.

The probation office superseded its petition four times between January and March 2021, alleging Lane had failed to refrain from unlawfully using controlled substances, submit monthly supervision reports, undergo required drug testing, and participate in required substance abuse treatment. On March 25, 2021, Lane admitted to the violations in the fifth petition, and the district court ordered him to complete custodial treatment at a residential reentry center lasting between 90 to 180 days.

Upon completion of his court-mandated treatment in mid-August 2021, Lane violated the conditions of his supervision a sixth time. At the end of August 2021, the probation office

amended its petition to add an additional violation for drug use and failure to pay a mandatory assessment fee. In November 2021, the probation office superseded its August petition by asserting additional violations.

In January 2022, Lane appeared before the district court and admitted to the alleged violations in the superseding petition from November 2021. The district court found Lane guilty and revoked his supervision. Accordingly, the district court imposed a six-month custodial sentence; ordered Lane to serve 15 months of supervised release upon completing his sentence; and directed him to undergo further drug treatment at a residential reentry center.

## C. Lane's Final Supervised Release Violation

Lane's conduct during his final supervised release serves as the catalyst for the events underlying his appeal to our court. After Lane was released from his six-month custodial sentence in May 2022, the probation office filed a petition in September 2022, alleging that Lane had committed two violations. Violation #1 alleged that Lane had been arrested and charged with fifteen felonies in Davidson County: first degree murder (two counts); murder (four counts); attempted first degree murder (four counts); especially aggravated burglary (four counts); and aggravated assault with a deadly weapon (one count). The petition recommended that the district court categorize Violation #1 as "Grade A," which when combined with Lane's criminal history category IV, would result in a Guidelines range of 24-30 months. A "Grade A" violation encompasses

> conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device of a type described in 26 U.S.C. § 5845(a); or (B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years.

U.S.S.G. § 7B1.1 (a)(1).

Violation #2 alleged that Lane had failed to report for random drug testing on August 15, August 24, and September 26, 2022. On September 29, 2022, an arrest warrant was issued for Lane pursuant to this supervised release violation petition to appear before a magistrate judge. Lane was arrested on October 1, 2024, for these charges after being released from state custody.[1]

On October 4, 2024, Lane filed a notice stating that he did not contest Violation #1 but contested Violation #2 from the September 2022 superseding petition.[2] A few weeks later, Lane amended his notice to clarify his position regarding Violation #1. Specifically, Lane argued that Violation #1 should be categorized as "Grade B"[3] instead of "Grade A" because even though the petition was "technically correct" at the time it was filed, he had subsequently been convicted of reckless homicide and all the other charges as alleged in the petition had already been dismissed.

### D. Lane's Revocation Hearing & Sentencing

In November 2024, the district court held a revocation hearing, in which Lane admitted to violating his supervision as alleged in Violation #1 but disputed the grade categorization. Lane also contested Violation #2, which accused him of failing to report for random drug testing on three occasions in 2022. The district court determined that the government had successfully proven, by a preponderance of the evidence, that Lane had committed Violation #2.

---

[1] Per the record, Lane was held in state custody between the issuance of the federal arrest warrant in September 2022 and October 2024.

[2] Even though Lane's Notice states that it pertains to the "Superseding Petition filed November 1, 2021 (Doc. 1125)" the date is misstated. DE 1157, Notice, Page ID 7759. Rather, Doc. 1125 in the docket is a petition dated September 29, 2022. The subsequent amended notice correctly states that Lane wished to clarify his position regarding an allegation "as stated in the Petition filed September 29, 2022 (Doc. 1125)." DE 1159, Amended Notice, Page ID 7562.

[3] A "Grade B" violation encompasses "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year." U.S.S.G. § 7B1.1 (a)(2).

Regarding Violation #1, the government called Lane's supervising probation officer to testify about the underlying facts and introduced Lane's state-court plea hearing transcript from February 2024 into the record. During his state-court plea hearing, Lane pled guilty to reckless homicide. Specifically, Lane admitted that on or about November 26, 2021, his co-defendants—Jamontaz Harrison and Christian Johnson—entered a Nashville home, armed, with the intent to commit a robbery. During the robbery, one of the victims grabbed a gun in self-defense, and an exchange of gunfire ensued, resulting in eight people shot and three dead – one of whom was Johnson. Subsequently, Harrison ran out of the house, with a mask on and a rifle in hand, and got into the passenger seat of Lane's black Honda Civic. Lane then drove himself and Harrison away from the crime scene. Relying on these facts, the district court concluded that Violation #1 was a "Grade A" violation because Lane's conduct constituted a "state . . . offense punishable by a term of imprisonment exceeding one year that (i) [was] a crime of violence, . . . or (iii) involve[d] possession of a firearm." DE 1165, Third Order, Page ID 7585 (citing U.S.S.G. § 7B1.1(a)); DE 1171, Tr. #1 of Revocation Hr'g, Page ID 7623-25.

To persuade the district court that Violation #1 should be classified as Grade B instead, Lane argued that there were no allegations in the plea hearing transcript that he personally had "ever possessed a firearm" as part of the robbery. DE 1171, Tr. #1 of Revocation Hr'g, Page ID 7622. Lane further argued that although reckless homicide was a serious crime, his conduct was reckless rather than intentional. Lane highlighted that he was not one of the armed individuals who burglarized the home. Lane also pointed out that his conduct, as alleged in Violation #1, occurred in November 2021, three years before the district court's last revocation order. Moreover, Lane argued that he had already served his state custody sentence related to this conduct and that

it was "not like he was put on a second term" of supervised release or "messed up again by picking up a new charge." DE 1172, Tr. #2 of Revocation Hr'g, Page ID 7635-36.

The district court disagreed, finding that Lane's conduct amounted to a Grade A violation because it constituted a "crime of violence or involve[d] possession of a firearm." DE 1171, Tr. #1 of Revocation Hr'g, Page ID 7625; *see also* DE 1172, Tr. #2 of Revocation Hr'g, Page ID 7642-43. The district court calculated the applicable Guidelines range by analyzing the highest grade from Lane's original offenses of conviction (Class C felony); the highest grade of his supervised release violation (Grade A); and Lane's category IV criminal history. As a result, the district court concluded that Lane's appropriate Guidelines range was 24 to 30 months and ultimately determined that the maximum sentence Lane would face was 24 months.[4]

In its Order & Judgment, the district court explained that after considering all the § 3553(a) factors along with the severity of Lane's offenses and repeated breaches of the conditions of supervised release, it was revoking Lane's supervised release and imposing a custodial sentence of 24 months to be followed by a term of supervised release under the same conditions previously imposed. Lane timely filed a Notice of Appeal.

**II.**

We review a district court's sentence for violations of supervised release "under a deferential abuse of discretion standard for reasonableness." *United States v. Adams*, 873 F.3d 512, 516 (6th Cir. 2017) (citation modified). "Reasonableness is comprised of both procedural and substantive reasonableness," both of which are reviewed for abuse of discretion. *Id.* at 516-17. Thus, a "sentence imposed upon revocation of supervised release, like an original sentence,

---

[4] Pursuant to 18 U.S.C. § 3583(e)(3), the court can revoke a term of supervised release and impose a custodial sentence of no more than two years when a defendant's underlying offense is a Class C felony.

must be procedurally reasonable." *United States v. Adams*, 124 F.4th 432, 438 (6th Cir. 2024). When a district court "considers an impermissible factor in sentencing, that is an abuse of discretion rendering the sentence procedurally unreasonable." *Id*. (citation modified).

In determining whether a sentence is substantively reasonable, we consider whether the district court "selects a sentence arbitrarily, bases the sentence on impermissible factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Abdulmutallab*, 739 F.3d 891, 908 (6th Cir. 2014). "Substantive reasonableness focuses on whether a 'sentence is too long (if a defendant appeals) or too short (if the government appeals).'" *United States v. Jones*, 81 F.4th 591, 602 (6th Cir. 2023) (quoting *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018)).

**III.**

**A. Procedural Reasonableness**

For a criminal sentence to be "procedurally reasonable," a district court "must properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence." *Rayyan*, 885 F.3d at 440. The district court found that Lane's conviction of reckless homicide (Violation #1) qualified as a Grade A violation because it constituted "a state . . . offense punishable by a term of imprisonment exceeding one year that (i) [was] a crime of violence, . . . or (iii) involve[d] possession of a firearm." DE 1165, Third Order, Page ID 7585.

Lane argues that by categorizing his Violation #1 as Grade A, the district court improperly calculated his Guidelines range, resulting in a procedurally unreasonable sentence.[5] To support his argument, Lane claims that his "actual conduct" did not "involve" personally possessing a firearm and that there are no facts demonstrating that he "ever possessed" one during the commission of the offense. CA6 R. 12, Appellant Br., at 10-11. Rather, as admitted in his state guilty plea, Lane emphasizes that he simply "drove a black Honda Civic away from the scene" of the crime. *Id.* at 11. To bolster his argument, Lane points to Application Note 1 to U.S.S.G. § 7B1.1, which states that "the grade of the violation is to be based on the defendant's actual conduct." *Id.* at 10 (quoting U.S.S.G. § 7B1.1 cmt. 1). But Lane does not cite any caselaw that interprets § 7B1.1(a)(1)(A)(iii) to require that he personally possessed the firearm. *Cf. United States v. Morrison*, 594 F.3d 543, 545 (6th Cir. 2010) (finding possession of a firearm where gun was "in plain view for [defendant] as he drove [his] vehicle . . . less than inches away from [defendant]," supporting "an inference that [defendant] knew the gun was there and . . . within his immediate control.") (citation modified). Accordingly, we are not persuaded by this argument and find that Lane's conduct in his underlying state-offense constitutes a crime that involves the possession of a firearm.

To start, our circuit has held that "when imposing a sentence for a violation of supervised release conditions, the district court focuses on *conduct*, rather than specific convictions, under USSG § 7B1.1." *United States v. Montgomery*, 893 F.3d 935, 940 (6th Cir. 2018) (emphasis in original). Thus, we "may consider hypothetical punishments" to apply to a defendant's actual conduct in determining the appropriate grade for an offense. *Id.* Here, the inquiry is not whether

---

[5] Categorizing Lane's sentence as a Grade B violation would have reduced Lane's Guidelines range to 12-18 months.

Lane personally possessed a firearm, but rather, whether Lane's actual conduct constituted a Grade A violation, regardless of being charged. *See United States v. McCullough*, 173 F.3d 430, at *6 (6th Cir. 1999) (unpublished table decision) ("USSG § 7B1.1(a)(1), defining 'Grade A Violations,' punishes *conduct* constituting a crime, not *conviction* for a crime. Application note 1 to the section emphasizes this, as it allows a court to find a Grade A violation even if prosecutors do not bring charges or do not obtain a conviction." (emphasis in original)); *see also United States v. Brownlee*, 297 F. App'x 479, 481-82 (6th Cir. 2008) ("Although Defendant argues that he was not charged with intent to distribute by Tennessee, Defendant's 'actual conduct' is the controlling consideration . . . in assessing Defendant's actual conduct, . . . the court found that Defendant intended to distribute the drugs in his possession.").

In his state-court plea hearing, Lane admitted that the surviving gunman "ran out after the shooting with a mask on and rifle in his hand . . . [and] got into the passenger seat of [his] black Honda Civic." CA6 R. 16, Appendix at 11-12. To categorize Lane's violation as Grade A, the district court relied on the fact that "there was a shooting . . . in the reckless homicide event that [Lane] pled guilty to." DE 1171, Tr. #1 of Revocation Hr'g, Page ID 7623. We agree. Given these facts, we find that Lane's actual conduct – driving the getaway car after an armed robbery turned deadly – constitutes reckless homicide involving the possession of a firearm.

Moreover, Section 7B1.1(a) instructs courts to determine whether the defendant's conduct constitutes a Grade A violation, which "*involves* the possession of a firearm." U.S.S.G. § 7B1.1(a)(1)(A)(iii) (emphasis added). A plain reading leads us to infer that there is no requirement that the defendant *personally* possess the firearm in question. Where the Guidelines require courts to consider a defendant's *personal* possession of a firearm, the language is explicit and unambiguous. *See, e.g.*, U.S.S.G. § 2K2.5 (imposing a two-level enhancement "[i]f the *defendant*

unlawfully possessed or caused any firearm or dangerous weapon *to be present* in a federal court facility") (emphasis added); U.S.S.G. § 4C1.1(a)(7) (allowing for a two-level decrease if certain conditions are met, including if "the *defendant* did not *possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm* or other dangerous weapon") (emphasis added). Accordingly, we find that the district court properly concluded that Lane's conduct constituted an offense that involved the possession of a firearm, so the sentence was not procedurally unreasonable.

Lastly, it should be noted that in his opening brief, Lane only argues that he was not in "possession of a firearm" in the commission of his state offense, for which he pled guilty to reckless homicide, but failed to dispute the district court's other finding – that this offense constituted a "crime of violence." Lane appears to have waived this argument. *See Bickel v. Korean Air Lines Co.*, 96 F.3d 151, 153 (6th Cir. 1996) (stating that defendant waived an issue by failing to raise it in his opening brief on appeal); *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 403 n.18 (6th Cir. 1999) (stating that an argument not presented to an appellate court in the initial brief is waived). Waiver aside, the record shows that Lane's conduct constituted a crime of violence.

In the context of grading a supervised release violation, courts look to section 4B1.2 of the Guidelines to define "crime of violence." U.S.S.G. § 7B1.1 cmt. 2. In that section, robbery is listed as one of the offenses constituting a crime of violence. *Id.* § 4B1.2(a)(2) (listing covered crimes). Additionally, "[t]he term[] 'crime of violence' . . . include[s] the offenses of aiding and abetting, attempting to commit, or conspiring to commit" a crime of violence. *Id.* § 4B1.2(d). As the getaway driver to an armed robbery that turned into a deadly shootout, Lane's *actual* conduct neatly fits into this definition, thus warranting a Grade A categorization. *See United States v.*

*Webster*, 426 F. App'x 406, 408, 411-12 (6th Cir. 2011) (affirming a district court's Grade A determination for a getaway driver of a deadly armed robbery attempt). Whether the district court ultimately determined Lane's conduct constituted an offense involving a firearm or an offense that constituted a crime of violence, either finding is supported by the record.

## B. Substantive Reasonableness

Lane also challenges the substantive reasonableness of his sentence. "'[T]he Guidelines should be the starting point and the initial benchmark' for determining a substantively reasonable sentence." *United States v. Robinson*, 778 F.3d 515, 519 (6th Cir. 2015) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). "A sentence is substantively reasonable if it is proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *Id.* (citation modified). We consider a challenge to a district court's sentence based on substantive reasonableness "under an abuse-of-discretion standard." *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020). One way to "gauge the substantive reasonableness of a sentence is to ask whether 'the court placed too much weight on some of the § 3553(a) factors and too little on others' in reaching its sentencing decision." *Id.* at 753-54 (quoting *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019)).

As a threshold matter, we afford a district court a rebuttable presumption of reasonableness when it imposes a sentence within the Guidelines. *See Jones*, 81 F.4th at 602. Here, the district court imposed a sentence of 24 months, the bottom of Lane's Guidelines range of 24-30 months. And because Lane "advances no arguments on appeal to rebut th[is] presumption of reasonableness," *United States v. Jackson*, 627 F. App'x 460, 465 (6th Cir. 2015), we affirm the district court's judgment.

Additionally, Lane's sentence is substantively reasonable because it conforms with the goals presented by § 3553(a).  The Supreme Court has "reiterated that the substantive reasonableness inquiry determines if the length of a sentence conforms with the sentencing goals set forth in 18 U.S.C. § 3553(a) and asks whether the district judge 'abused his discretion in determining that the § 3553(a) factors supported' the sentence imposed." *Perez-Rodriguez*, 960 F.3d at 753 (quoting *Holguin-Hernandez v. United States*, 589 U.S. 169, 173 (2020)).  Ultimately, we "must respect the district court's reasoned discretion to weigh the factors to fashion individualized, fact-driven sentences without interference." *Id.* at 754 (citation modified).

Here, the district court properly weighed the § 3553(a) factors.  During the hearing, the court described Lane's original sentence as "pretty serious" and Violation #1 as "not the kind of conduct that is appropriate for someone on supervised release."  DE 1172, Tr. #2 of Revocation Hr'g, Page ID 7642.  The court further evaluated Lane's criminal history and characteristics, including his numerous drug-related revocations and the facts underlying his reckless homicide conviction.  The court also determined that Lane's "history of conduct ha[d] put the public at risk." DE 1172, Tr. #2 of Revocation Hr'g, Page ID 7643.  Lastly, the court recognized that if its sentence could deter Lane from engaging in further criminal activity, it would have accomplished its purpose.

We also acknowledge that a district court's weighing of the § 3553(a) factors itself "is a matter of reasoned discretion, not math" and our "highly deferential review of a district court's sentencing decisions reflects as much." *Rayyan*, 885 F.3d at 442.  We have made clear that it is not our "task to impose sentences in the first instance or to second guess the individualized discretion of the district court when it appropriately relie[d] on the § 3553(a) factors." *United States v. Musgrave*, 761 F.3d 602, 609 (6th Cir. 2014) (citing *United States v. Davis*, 537 F.3d 611,

618 (6th Cir. 2008)). Here, the "district court properly considered all of the [§ 3553(a)] factors, balanced them, and imposed a reasonable sentence," so we "see no basis for second guessing that judgment." *See Rayyan*, 85 F.3d at 443.

Lane argues that the district court abused its discretion because it "failed to consider the fact that the offense conduct had occurred in 2021, that probation knew about it back then, but failed to file a violation until [he] was arrested by state authorities." CA6 R. 12, Appellant Br., at 13. Specifically, Lane contends that this fact contravenes the "protection of the public and deterrence" factor because, in his view, if he were "truly a danger to the public or in significant need of deterrence, surely probation would not have agreed to his release in February of 2022." *Id.* Lastly, Lane argues that the amount of time between his conduct underlying Violation #1 and his revocation hearing "undercuts the argument that sentencing him now, after he had previously been released in 2022, serves some deterrent function or serves to protect the public." *Id.*

We do not find Lane's arguments persuasive and instead agree with the government that the district court here "engaged in a balanced analysis of the § 3553(a) factors and gave each factor the appropriate weight." CA6 R. 15, Appellee Br., at 27. We continue to recognize that "a sentencing judge need not respond to a defendant's every argument." *United States v. Adkins*, 794 F. App'x 514, 515 (6th Cir. 2020). And we agree with the government that this "is particularly true when the defendant did not even articulate th[is] specific argument at sentencing." CA6 R. 15, Appellee Br., at 29.

We further find that contrary to Lane's assertion that "probation knew" about Violation #1, it is unclear whether it did, and, if so, to what extent. At the revocation hearing, Officer Foutch was asked whether she knew about Lane's state offense, to which she replied that although she "knew that there was some underlying behavior going on," probation was "trying to determine . .

. to what extent Mr. Lane was even involved, if anything, at that time. So it wasn't something that was addressed in [the] prior revocation hearing." DE 1171, Tr. #1 of Revocation Hr'g, Page ID 7609. Notably, Lane did not object to the district court's sentence at his hearing or raise the argument he now advances—that the time lapse between his 2022 release and his revocation either serves as a deterrent or protects the public. Because Lane failed to raise this argument at sentencing, he has waived his right to assert it on appeal in the absence of plain error.[6] *See Phillips v. United States*, 82 F.3d 418 (6th Cir. 1996) (unpublished table decision).

**IV.**

Given that the district court properly categorized Lane's Grade A violation, balanced the relevant § 3553(a) sentencing factors considering Lane's history, characteristics, and prior conduct, and provided a reasoned and sufficient basis for Lane's sentence, we find that the district court did not abuse its discretion.

For the foregoing reasons, we affirm the district court's sentence.

---

[6] Here, the district court did not commit plain error in imposing Lane's sentence because as the record shows, it considered all the § 3553(a) factors. *Cf. United States v. Inman*, 666 F.3d 1001, 1006-07 (6th Cir.2012) (per curiam) (vacating and remanding on plain error review where the record did not show the district court considered the § 3553(a) factors) However, even though plain-error review might have been available for this claim, our circuit has held that it "will not apply the plain-error standard *unless* requested to do so by one of the parties." *United States v. Williams*, 641 F.3d 758, 763 (6th Cir. 2011) (emphasis added). Because Lane has not requested plain-error review from us, this "by itself is reason enough not to apply this standard to th[is] issue." *United States v. Blackie*, 548 F.3d 395, 404 (6th Cir.2008) (Sutton, J., concurring).